**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Lorraine Elias,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-18-00200-TUC-RCC (DTF)<br><br>**ORDER** |

Plaintiff Margaret Lorraine Elias initiated this matter seeking review of the final decision of the Commissioner of Social Security Administration. (Doc. 1.) On July 18, 2019, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation (R&R) in which he recommended that this Court find that (1) the Administrative Law Judge's (ALJ) step four and five determinations were supported by substantial evidence, (2) the ALJ properly considered Plaintiff's mental limits when creating the residual functional capacity (RFC), and (3) the ALJ appropriately considered Plaintiff's symptom testimony. (Doc. 19.) Magistrate Judge Ferraro further recommended that this Court affirm the ALJ's decision. *Id.* at 22. Plaintiff filed an objection (Doc. 19) and Defendant filed a three-sentence response (Doc. 21). Upon review, the Court adopts the Magistrate Judge's R&R in part and reverses the ALJ's decision.

## I. REPORT AND RECOMMENDATION: STANDARD OF REVIEW

The standard the District Court uses when reviewing a magistrate judge's R&R is dependent upon whether a party objects: where there is no objection to a magistrate's

factual or legal determinations, the district court need not review the decision "under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, when a party objects, the district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). Moreover, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff does not object to the Magistrate Judge's factual and procedural history. The Court, therefore, adopts the factual and procedural history and will not restate them here except as they relate to Plaintiff's objections.

## III. STANDARD OF ALJ REVIEW

To determine whether a claimant is disabled, an ALJ engages in a five-step process. *See* 20 C.F.R. §§ 404.1520, 416.920. The burden first rests on the claimant to show the following: In **Step One,** the claimant must show he has not engaged in substantial gainful activity since the alleged onset of disability. In **Step Two**, the claimant must demonstrate he has a severe impairment(s). For **Step Three**, Plaintiff must prove his alleged impairment(s) meets or equals the listed impairment(s). *Id*. "If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits. If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed[,] . . . the ALJ then proceeds to [**Step Four**], which requires the ALJ to determine the claimant's residual functioning capacity (RFC) based on all the relevant evidence in the record, including impairments not classified as 'severe.'" *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015) (citing 20 C.F.R. § 416.920(a)(4)(iv)). The RFC reflects "the most a claimant can do despite any limitations. *Id*. (citing 20 C.F.R. § 416.945(a)). "After developing the RFC, the ALJ must determine whether the claimant

can perform past relevant work." *Id*. The burden then shifts to the government at **Step Five**, who must show "that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*; 20 C.F.R. §§ 404.1520, 416.920.

An ALJ's decision may be reversed only when it is not supported by substantial evidence or constitutes harmful legal error. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).

### IV. PLAINTIFF'S OBJECTIONS

#### a. Step Four: Composite Job

##### i. Fundamental Nature of Job

Plaintiff first objects to Judge Ferraro's determination that the ALJ's step four contention that Plaintiff was not disabled was supported by substantial evidence. At step four, the ALJ stated that Plaintiff's jobs as "a secretary, data entry clerk, and administrative clerk" were considered past relevant work. (Administrative Record (AR) 959.) Then the ALJ compared the requirements of this past work to the limitations noted in Plaintiff's RFC and found that Plaintiff was capable of performing these jobs "as generally performed in the national economy." AR 959.

Plaintiff argues that the ALJ was not permitted to determine Plaintiff's ability to perform such work "as generally performed" because the past work–specifically work at Tucson Unified School District (TUSD)–was a composite job of both attendance clerk and registration technician. (Doc. 20 at 2.) Plaintiff argues that SSR 82-61 states that a composite job has no analog in the national economy, and because there is no equivalent job under the Dictionary of Occupational Titles (DOT) for which to compare, it cannot be decided as "generally performed" at step 4. *Id*.

The Magistrate Judge found that case law belied Plaintiff's assertion. Citing *Stacy v. Colvin*, 825 F.3d 563, 569-70 (9th Cir. 2016), Judge Ferraro noted that like *Stacy*, a determination of as "generally performed" was not precluded because Plaintiff could perform the fundamental nature of the work. (Doc. 19 at 11.) In *Stacy*, the Vocational

- 3 -

Expert found that the claimant "engaged in supervisory duties 70-75 percent of the time." *Stacy*, 825 F.3d. at 570. There, even though some of the time the claimant was engaged in other tasks, this "did not change the fundamental nature of the work" and a determination that the claimant could perform past work as generally performed was proper. *Id*.

Here, two Vocational Experts (VE) testified about Plaintiff's previous work. In the December 2016 Administrative Hearing, VE Sala categorized Plaintiff's past work as secretary, data entry clerk, and administrative clerk. (AR 1009.) At an Administrative Hearing on July 16, 2012, VE McAlpine testified that Plaintiff's TUSD job was 70% data entry and 30% attendance clerk. (AR 533.) The ALJ found that Plaintiff could perform the past work of both administrative clerk and data entry clerk. (AR 959.) The data entry work, being 70%, was the fundamental nature of the work. So, there is substantial evidence that the job listed by the VE and that used in by the ALJ were equivalent as generally performed. *See, eg.*, *Coehooorn v. Berryhill*, No. ED CV 16-373-KS, 2017 WL 1407636, at *21 (C.D. Cal. Apr. 19, 2017) ("[I]f substantial evidence supports the finding that a job identified by the VE and relied upon by the ALJ is equivalent as generally performed to the past relevant work, a denial at step four may be upheld."). Here, the work had a comparable job in the national economy because the fundamental nature of the work resembled that of a data entry clerk. Furthermore, other than arguing that it is impermissible to assert "as generally performed" for composite jobs, Plaintiff does not indicate how this assessment was incorrect. The ALJ was correct.

### ii. Program Operations Manual System §25005.020(B)

Plaintiff also claims that the Program Operations Manual System (POMS) § 25005.020(B) prevented the ALJ from finding Plaintiff could perform past relevant work as "generally performed." (Doc. 20 at 3.) She states that according to SSR 13-2, ALJ's are required to follow POMS and therefore both the ALJ and the Magistrate Judge erred because, as stated in POMS § 25005.020(B), "[a] composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" Plaintiff also questioned the Magistrate Judge's use

1  of a 1996 District Court decision to support his opinion that POMS was not binding on
2  the ALJ. (Doc. 20 at 3.)

3  The Court agrees with Judge Ferraro. POMS is not binding on the ALJ. Plaintiff suggests that the Magistrate Judge's support is outdated. In fact, the oldest case the Magistrate Judge referred to was not an outlier, but demonstrated a long-standing holding that POMS did not bind the ALJ. *See Kennedy v. Colvin*, 738 F.3d 1172, 1177-78 (9th Cir. 2013) ("POMS 'does not impose judicially enforceable duties on either this court or the ALJ.'" (citing *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011) (POMS should be respected when the interpretation of a regulation is ambiguous, but does not create duty for ALJ to follow))); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010) (POMS does not bind either the District Court or the ALJ). And as stated previously, based on the evidence, the ALJ showed that the data clerk position constituted the fundamental nature of her work with TUSD, it had a DOT equivalent, and Plaintiff could perform this job as generally performed.

### iii. **Post-Hoc Rationalization**

Plaintiff finally argues that the Magistrate Judge made a post-hoc rationalization, asserting that even though the ALJ failed to consider the TUSD job as a composite job, and failed to apply the POMS § 25005.020(B) requirement that composite jobs cannot be generally performed, this Court should "evaluate [VE] McAlpine's testimony in the first instance and conclude that it is consistent with finding Ms. Elias not disabled based on composite past relevant work as generally performed." (Doc. 20 at 4.)

The Court does not find this argument persuasive. The ALJ did consider VE McAlpine's testimony, finding that the VE characterized Plaintiff's former work as data entry clerk and administrative clerk. (AR 958.) The ALJ then found that the VE's testimony was consistent with the DOT information for these jobs and that Plaintiff was capable of working in these positions as generally performed in the national economy. (AR 958-59.) The Magistrate Judge determined that there was substantial evidence demonstrating that the past work was equivalent to the DOT listings for data clerk (70%

of the TUSD work according to VE McAlpine) and administrative clerk (TUSD work as defined by VE Sala). Since the ALJ found Plaintiff could perform both, the Magistrate Judge stated that any error in reconciling the difference in description about the job was harmless. This Court agrees.

### b. *Mental Limitations and RFC Assessment*

Plaintiff finally argues that the Magistrate Judge erred when he recommended affirming the ALJ's RFC assessment because the RFC failed to account for Plaintiff's mental limitations, despite the ALJ's acknowledgement that Plaintiff had mild difficulties socially and mild issues with concentration, persistence, and pace. (Doc. 20 at 7-11.)

Plaintiff asserts that the ALJ needed to include her non-severe mental impairments in the RFC, and the Magistrate Judge erred when he stated the ALJ could consider the non-severe impairments when formulating the RFC but did not need to specifically include these impairments in the final RFC and hypotheticals presented to the VE. *Id*. at 9. If the ALJ was going to omit the mental limitations from the RFC and hypotheticals, Plaintiff contends, the ALJ needed to provide cogent reasons for the omission. *Id*.

The ALJ must consider both severe and non-severe impairments when assessing a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(2). The Code of Federal Regulations does not, however, require this assessment at any certain point in the ALJ's opinion. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001).

The Magistrate Judge conceded that the ALJ needed to assess and consider Plaintiff's non-severe mental limitations, however, there was no requirement that the ALJ do so under a certain section of his opinion. (Doc. 19 at 17-18 (citing *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001).) The ALJ considered the mental limitations at step two, found them minimally limiting, and incorporated that assessment into the RFC. *Id*.

The Court finds that there was substantial evidence that Plaintiff's non-severe mental impairments were thoroughly assessed at step two and that the ALJ adequately explained why the mental limitations were not included in the RFC. The ALJ found that Plaintiff's depression and limitations in social activity, concentration, persistence, and

pace would not "cause more than minimal limitation in [her] ability to perform basic mental work." (AR 948.) The ALJ also noted Plaintiff had an ability to obtain jobs that required interaction with others; and her concentration, persistence, and pace exhibited only mild limitations, and treatment records reflected these areas were good or fair. (AR 949 (citing AR 1532, 1535, 1562, 1568, 1586, 1588, 1989).) The ALJ described Plaintiff's history and noted over and over that despite her depression, it was successfully controlled through medication, and she consistently reported she was feeling well. (AR 947-48.)

Furthermore, Plaintiff takes issue with the Magistrate Judge's reliance on Dr. Tangeman and Campbell's opinions to affirm the ALJ's opinion because these examiners found no impairment even though the ALJ acknowledged Plaintiff's depression and mild social deficits. (Doc. 20 at 9.) This argument is not dispositive because despite noting mild issues, the ALJ explained that the social deficits and depression would not affect Plaintiff's ability to interact with others. (AR 948-49.) Moreover, the ALJ did not solely depend upon Dr. Tangeman and Campbell's input when formulating the RFC, but considered several other sources of information, including Plaintiff's GAF scores. (AR 946-49.) The ALJ noted, "even moderate limitations [in social interaction, concentration, persistence, and pace] are unsupported by GAF scores of 70 and 80." (AR 948.) The ALJ's RFC need only incorporate credible limitations supported by substantial evidence and "be consistent with the restrictions identified in the medical testimony." *Rainsford v. Comm'r Soc. Sec. Admin.*, No. CV-17-00530-TUC-EJM, 2018 WL 6499669, at *8 (D. Ariz. Dec. 11, 2018) (quoting *Dschaak v. Colvin*, 2015 WL 181803, *3 (D. Or. Jan 14, 2015)).

Finally, Plaintiff claims that the Magistrate Judge erred in finding the cases on which Plaintiff relied distinguishable; these cases require the RFC to account for non-severe impairments. *Id*. The Court agrees with the Magistrate Judge, the ALJ considered Plaintiff's mental impairments when formulating the RFC, and for the reasons stated in the Magistrate Judge's R&R, the cases cited by Plaintiff are distinguishable. The Ninth

1  Circuit does not require the ALJ to describe the evidence supporting its conclusions in a
2  certain section of the ALJ's opinion as long as the reasons are explained within the
3  opinion. *See Lewis*, 236 F.3d at 513.
4     The Court finds that the Magistrate Judge was correct; substantial evidence
5  supports that the ALJ considered Plaintiff's mental impairments when formulating the
6  RFC and adequately explained why limitations in the areas of depression, social activity,
7  concentration, persistence, and pace were not included in the RFC. Accordingly, this
8  Court determines that the ALJ considered Petitioner's mild mental limitations in his
9  formulation of the RFC and did not err in his consideration of Plaintiff's symptom
10 testimony.

   *c. Alternative Step Five Determination*

    **i. <u>Use of the Grids to Direct Non-Disabled Determination</u>**

13  At step five, the ALJ may decide whether a claimant can perform work in the
14  national economy by "apply[ing] the Secretary's [M]edical-[V]ocational [G]uidelines
15  (the grids) in lieu of taking the testimony of a [VE] only when the grids accurately and
16  completely describe the claimant's abilities and limitations." *Jones v. Heckler*, 760 F.2d
17  993, 998 (9th Cir. 1985). However, "[i]f the grids fail accurately to describe a claimant's
18  particular limitations, the Secretary may not rely on the grids alone to show the
19  availability of jobs for the claimant." *Id*. A non-exertional limitation (i.e. a limitation that
20  inhibits work without affecting strength) is not considered in the grids and may preclude
21  the use of the grids "if sufficiently severe." *Penny v. Sullivan*, 2 F.3d 953, 958-59 (9th
22  Cir. 1993). Therefore, an ALJ may utilize the grids unless a non-exertional limitation
23  "significantly limit[s] the range of work permitted by [the claimant's] exertional
24  limitations." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).
25  Plaintiff complains that Judge Ferraro erred in finding that it was permissible for
26  the ALJ's rely upon the grids to determine Plaintiff was not disabled between October 15,
27  2005 to October 4, 2011. (Doc. 20 at 5-7.) Plaintiff claims the ALJ's determination was
28  incorrect because the he failed to provide explicit reasons for rejecting the environmental

limitations noted by Agency examining physician Dr. Hassman. *Id.*

Dr. Hassman indicated in July 2006 that Plaintiff should not work around chemicals, dust, fumes, or gasses. (AR 296.) The ALJ gave Dr. Hassman's opinion significant weight insofar as it stated Plaintiff was able to perform "light exertional work," but never mentioned Dr. Hassman's environmental restrictions. (AR 956.) Nevertheless, the ALJ's RFC indicated that Plaintiff was not subject to any environmental limitations. (AR 951.)

At step five, the ALJ found that given Plaintiff's "residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines," that the grids directed the determination of not disabled. (AR 960.)

In her opening brief, Plaintiff contended that "substantial evidence does not support the ALJ's [RFC] assessment and, thus, that [VE] testimony was required" for the step five, non-disabled determination. (Doc. 16 at 13.) Because the RFC did not include the environmental limitations and failed to explain why, the ALJ committed error. *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (there must be, at minimum, "specific and legitimate reasons" for rejecting an examining physician's opinion).) This error was harmful because "Dr. Hassman's opinions at issue significantly diminish [Plaintiff's] ability to perform both 'sedentary' and 'light' work." (Doc. 16 at 15.)

The Commissioner did not dispute that the ALJ provided no reason for implicitly rejecting Dr. Hassman's environmental limitations and instead asserted that the "environmental restrictions do not significantly affect the potential unskilled occupational base." (Doc. 17 at 7.) So, although there was no evaluation of environmental restrictions, "they did not significantly erode the light occupational base, and did not undermine the ALJ's reliance on the grids." *Id.* (citing SSR 83-14, 1983 WL 31254).

Plaintiff replied that the Commissioner misunderstood SSR 83-14. Plaintiff believes SSR 83-14 explains that non-exertional limitations—immaterial restrictions such as avoiding feathers—would not affect the light occupational base and therefore use of the grids is permissible. (Doc. 18 at 3-4.) However, unlike the avoidance of feathers,

Plaintiff's environmental limitations have more than minimal effect on the unskilled light occupational base, and SSR 83-14 would require a VE's opinion about whether the limitation significantly diminishes the occupational base. *Id.*

Furthermore, she claims that SSR 85-15, 1985 WL 56857, also presents a range of possibilities; that either a claimant: (1) should avoid excessive exposure to the environmental trigger; (2) can tolerate very little of the trigger, or (3) can be exposed to some amount of the environmental trigger that lies between (1) and (2). (Doc. 18 at 4-5.) Situations (2) and (3) require VE testimony, while situation (1) does not. *Id.* Plaintiff argues that Dr. Hassman's suggestion that Plaintiff avoid working around chemicals, dust, fumes, and gasses falls somewhere between the latter two situations and requires VE testimony to direct a finding of non-disabled. *Id.*

Like the Commissioner, Judge Ferraro assumed that (1) Plaintiff suffered from the environmental limitations, and (2) the ALJ did not address reasons for disclaiming them. The judge also concluded that SSR 83-14 applied since SSR 85-15 was for solely non-exertional restrictions and Plaintiff had both exertional and non-exertional limitations. (Doc. 19 at 16.) He concluded that Plaintiff had not indicated why the environmental restrictions "significantly erodes the 'light; occupational base.'" *Id.*

Plaintiff's objection claims that she did demonstrate that Dr. Hassman's environmental restrictions degraded the occupational base under SSN 83-14 because the prohibition of exposure to chemicals, gasses, fumes, and dust was more significant than the example in 83-14–avoidance of feathers–and therefore a finding of non-disability required testimony by a VE. (Doc. 20 at 6-7.) In support, Plaintiff quoted *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984), which stated:

> Inability to tolerate dust or fumes is one example given in the guidelines of an environmental restriction not factored into the [grids]. 20 C.F.R. Part 404, Subpart P, App. 2 § 200.00(e). Other courts have recognized that the [grids] are not determinative of disability where, as here, a claimant cannot tolerate dust, fumes or heat. *Thomas v. Schweiker*, 666 F.2d 999, 1004 (5th Cir. 1982); *see Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir. 1981) (per curiam) (intolerance for lint).

*Kail*, 722 F.2d at 1498; *see also Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1472 (remand necessary when no consideration of degradation of occupational base due to inability to tolerate dust or fumes).

The Commissioner's response to the objection sheds no light on this matter, merely incorporating by reference all previous argument. (Doc. 21.)

It is conceded that the ALJ failed to provide specific reasons for giving significant weight to Dr. Hassman's opinion while implicitly rejecting this same opinion by finding Plaintiff suffered from no environmental limitations. This constituted legal error.

Furthermore, the Commissioner has provided no reason, other than citing SSR 83-14, to support the assertion that the environmental limitations do not undermine both the RFC determination and the reliance upon the grids. Moreover, Plaintiff appropriately adds that at step five it is the Commissioner's burden to show Plaintiff cannot perform work in the national economy. (Doc. 20 at 7 (citing 20 C.F.R. § 404.1560(c).) The Commissioner has not met this burden.

After determining that the ALJ has committed legal error, the Court must consider whether the error has harmless. Harmless error occurs "when it is clear from the record the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Garcia v. Comm'r Soc. Sec.*, 768 F.3d 925, 932 (9th Cir. 2014) (citation and internal quotation marks omitted). The Court does not find that the ALJ's failure to explain why he discredited Dr. Hassman's environmental limitations was inconsequential to the disability determination. First, including the limitation in the hypothetical posed to the VE could have changed the analysis of whether Plaintiff was capable of performing work in the national economy. Furthermore, case law indicates that a complete restriction on exposure to chemicals, fumes, gases and dust may preclude the use of the grids to direct a finding of non-disability without testimony by a VE. The Commissioner has not met its burden of demonstrating that the environmental restrictions would not affect the occupational base and preclude all work in the national economy. The ALJ's omission was harmful error. The Court will reverse and remand this matter to permit the ALJ to

consider VE testimony regarding the environmental limitations.

Finally, the Court has reviewed the areas of the R&R not objected to by the Plaintiff and finds them well-reasoned and legally sound.

IT IS THEREFORE ORDERED:

1. The Report and Recommendation is ADOPTED IN PART to the extent provided herein.
2. The decision of the Commissioner denying Plaintiff's claim for benefits is REVERSED.
3. This case is REMANDED for consideration in accordance with this Order.

Dated this 10th day of September, 2019.

_____
Honorable Raner C. Collins
Senior United States District Judge